

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

MICHAEL CLEARY, DEMETRY KENEZUROFF, )
HARRY MORGAN, BOB OWEN, THOMAS WALTER, )
and ERNEST MORGAN, on behalf of )
themselves and all other persons who )
are now or will be similarly situated, )
)
               Plaintiffs, )
)
       vs. )
)
ROBERT SMITH, Commissioner, Department )
of Health and Social Services; ROGER )
ENDELL, Director, Division of Adult )
Corrections, Department of Health )
and Social Services; VERNON CAULKINS, )
Assistant Director, Division of Adult )
Corrections, Department of Health and )
Social Services; REVEREND WILLIAM LYONS,)
BEVERLY DUNHAM, FREDERICK PETTYJOHN, )
AL WIDMARK, and CONRAD MILLER, all of )
the Alaska Parole Board; SAMUEL )
TRIVETTE, Executive Director of the )
Alaska Board of Parole, and their )
subordinates, employees and agents, )
)
              Defendants. )
_____)

No. 3AN-81-5274 CIV

Filed in the Trial Courts
STATE OF ALASKA THIRD DISTRICT

      2 1 1990

Clerk of the Trial Courts

FINAL SETTLEMENT AGREEMENT AND ORDER

Philip R. Volland
Rice, Volland and Gleason, P.C.
211 H Street
Anchorage, Alaska 99501
(907) 276-5231

Attorneys for Plaintiffs

Michael J. Stark
Assistant Attorney General
Office of the Attorney General
P.O. Box KC
Juneau, Alaska 99811
(907) 465-3428

Attorneys for Defendants



CLEARY, et al. vs. SMITH, et al.
FINAL SETTLEMENT AGREEMENT AND ORDER
INCLUDING STIPULATED AMENDMENTS
PLUS AMENDMENTS REQUIRING COURT APPROVAL

## TABLE OF CONTENTS



| Title | | Page |
|---|---|---|
| I. | COVERAGE.................................................1 | |
| II. | PRINCIPLES OF JUDICIAL INTERPRETATION AND DEFINITIONS.........................................2 | |
| III. | FACILITY REQUIREMENTS....................................4 | |
| | A. Heat.................................................4 | |
| | B. Lighting and Ventilation.............................5 | |
| | C. Nonsmoking Area......................................5 | |
| | D. Plumbing.............................................5 | |
| | E. Gymnasium/Recreation Area............................6 | |
| | F. Law Library.........................................6 | |
| | G. Cell Size and Dayroom Space..........................6 | |
| | H. Program Support Space................................7 | |
| | I. Visitation Rooms....................................7 | |
| | J. Attorney-Client Rooms...............................7 | |
| | K. Staff Space.........................................8 | |
| | L. New Facilities for Women.............................8 | |
| IV. | OPERATIONAL REQUIREMENTS.................................9 | |
| | A. Staffing............................................9 | |
| | B. Staff Training......................................9 | |
| | C. Fire and Life Safety...............................10 | |
| | D. Sanitation.........................................10 | |
| | E. Inmate Personal Hygiene.............................11 | |
| | F. Inmate Clothing....................................11 | |
| | G. Bedding............................................12 | |
| | H. Housing............................................13 | |
| | I. Food Services......................................15 | |
| | J. Medical and Dental Care.............................16 | |
| | K. Mental Health Services..............................20 | |
| V. | RIGHTS & OPPORTUNITIES TO BE PROVIDED INMATES............24 | |
| | A. Exercise & Recreation..............................24 | |
| | B. Visitation.........................................25 | |
| | C. Telephone Communication.............................27 | |
| | D. Mail Communication..................................30 | |
| | E. Inmate Information..................................33 | |
| | F. Access to Courts and Legal Services.................34 | |
| | G. Access to the Law Library and Legal Materials.......35 | |
| | H. Religious Freedom..................................40 | |
| | I. Inmate Businesses..................................41 | |
| | J. Commissary Privileges...............................42 | |
| | K. Inmate Councils....................................42 | |

Exhibit A Page 3 of 115
Case 3:25-cv-00086-SAB    Document 46-1    Filed 07/14/25    Page 3 of 36

VI.   REHABILITATION PROGRAMS & SERVICES......................44

      A. Availability of Programs for Female Inmates...........44
      B. Counseling...........................................44
      C. Lifeskills Program...................................44
      D. Educational Services.................................45
      E. Vocational Training/Work Programs....................47
      F. Rehabilitation Services..............................48
      G. Special Women's Services.............................48
      H. Pre-Release Assessments..............................48
      I. Parole Planning......................................49
      J. Gate Money...........................................49
      K. Participation in Programs and Services...............49
      L. Program Supervision..................................49
      M. Program Evaluation...................................50

VII.  CLASSIFICATION, ADMINISTRATIVE SEGREGATION,
      DISCIPLINE, AND GRIEVANCES.............................50

      A. Classification.......................................50
      B. Administrative Segregation...........................55
      C. Discipline...........................................59
      D. Hearing Advisors.....................................64
      E. Grievances and Allegations of Noncompliance..........65

VIII. OVERCROWDING...........................................69

IX.   FUTURE MONITORING, MODIFICATION AND
      ENFORCEMENT OF THIS AGREEMENT..........................78

      A. Monitoring...........................................78
      B. Modification, Future Enforcement and
         Relief from Judgment.................................79

X.    RESOLUTION OF PENDING APPEALS AND CLAIMS................84

XI.   PAYMENT OF PLAINTIFFS' FEES AND COSTS AND
      RELEASE OF PLAINTIFFS' COUNSEL.........................87

ORDER........................................................88


APPENDICES:

Pleadings in Cleary v. Smith Required to be
   Held in Each Facility Law Library................Appendix A

Materials Required to be Maintained In
   Each Facility Law Library.......................Appendix B

Plaintiffs' Points on Appeal........................Appendix C

-ii-

Defendants' Points on Appeal...........................Appendix D

Order Issued After Trial, Dated March 1, 1985.........Appendix E

Provisions of the Final Settlement Agreement for
which implementation is extended from November 1,
1990, to January 1, 1991.............................Appendix F

-iii-



## SETTLEMENT AGREEMENT

### I. COVERAGE.

**A.** This Settlement Agreement between the undersigned parties represents a full and final disposition of the pending claims in this case, including those issues before the Supreme Court in Case Nos. S-1498, S-1573 and S-3555.

**B.** This agreement supersedes the Partial Settlement Agreement and Order in this action, dated January 23, 1983, including any subsequent memoranda of understanding. This agreement also incorporates the Memorandum Decision and Findings of the Superior Court issued March 1, 1985, the findings and conclusions of Special Master Sanders issued in relation to contempt motions filed between 1983 and 1988, the recommendations of Standing Compliance Monitor Reardon made since January 1988, and of Standing Compliance Monitor Charles Campbell made since November 1, 1989, and the rulings of the trial court issued in relation to the findings of both Master Sanders and Monitor Reardon on questions of interpretation or compliance with the Partial Settlement Agreement of 1983. This agreement also resolves each point of appeal raised by both parties in Supreme Court Case Nos. S-1498 and S-1573, regarding the Findings and Decision of the Superior Court after trial in 1984.

**C.** Throughout this agreement, the named defendants are referred to collectively as "the Department." The duties imposed on the Department by this agreement shall apply to any successor

department, division, or agency of the state of Alaska which is statutorily responsible for administration of the state's adult correctional facilities.

D.  Upon approval by the Superior Court, the provisions of this agreement will become binding on the Department and members of the plaintiff class, Subclasses A and B. These subclasses include all inmates, with some exceptions, who are or will in the future be incarcerated in correctional facilities owned or operated by the state. $\frac{1}{}$ Members of the class who are known as Subclass C, and who consist of Alaskan inmates serving their sentences in Federal Bureau of Prisons facilities, are not parties to this agreement, except insofar as their treatment upon return to Alaska is concerned.

E.  The parties acknowledge that an inmate may waive, in writing, the application of any provision of this agreement; however, the Department first has the burden of establishing that the waiver was made knowingly and voluntarily.

## II.  PRINCIPLES OF JUDICIAL INTERPRETATION AND DEFINITIONS.

A.  This Settlement Agreement is a document which both parties have negotiated and drafted. Since both parties participated equally in drafting its terms, the general rule of

---

$\frac{1}{}$ Subclasses A and B do not include individuals charged only with a federal offense or offenses, individuals awaiting extradition with no pending charges other than a federal offense or offenses, individuals temporarily incarcerated because of involuntary mental commitment proceedings, and individuals taken into protective custody pursuant to AS 47.37.170 because of their intoxication.

-2-

construction interpreting a document against the draftsperson shall not be applied in future interpretation of this agreement.

B. Except as noted, references in this agreement to statutory provisions or regulations refer to those regulations or statutes in effect at the time this agreement is executed.

C. A number of provisions in this agreement discuss rights or privileges that are to be afforded certain classes of inmates absent an "individualized determination" that such an inmate is an escape, smuggling or security risk. This phrase is not intended to create a liberty interest requiring a due process hearing before denial of the relevant rights or privileges. The phrase is intended, however, to require the superintendent or designee to, in writing, articulate specific facts applicable to the inmate which justify the determination that the inmate is an escape, smuggling or security risk and, therefore, not entitled to a certain right or opportunity. Notice of this determination shall be provided to the inmate as soon as practicable before or upon denial of the right or opportunity. An inmate may challenge such a determination by filing a grievance; or if the action is related to classification (e.g., administrative segregation) or discipline, by filing an appeal.

D. Provisions in this agreement make certain action contingent upon a "substantial and immediate threat". A substantial and immediate threat is intended to mean a risk of harm or injury the nature of which is significant, which is based on objective, articulable facts and one for which the danger is imminent or present.

-3-

E.    This agreement also contains provisions which may apply to a "new or future facility". The term "new or future facility" is intended to include additions or modifications to an existing facility unless the context indicates otherwise.

F.    An "indigent" inmate for the purpose of this agreement is any inmate who has less than $20.00 presently available in his or her account and who has had no more than $50.00 in his or her account during the preceding 30 days. An inmate with more than $50 in his or her account during the preceding 30 days will still be considered indigent if no more than $50 remained in the account after mandatory deductions (that is, restitution, fines, child support enforcement orders, violent crimes compensation payments, or civil judgments) or deductions made for educational materials or courses, counseling, or health care.

### III. FACILITY REQUIREMENTS.

The following requirements apply to all adult correctional facilities maintained by the Department of Corrections, unless otherwise noted:

A.    **Heat.**    The Department shall maintain temperatures within the facility between 65 degrees and 80 degrees at all times.    If temperatures exceed 80 degrees, the Department shall immediately take steps to reduce the temperature through repair or replacement of equipment, the provision of portable fans, the opening of doors and windows for ventilation, or such other action as may be necessary to reduce temperature within the facility.    If temperatures drop below 65 degrees, the Department

-4-

shall immediately repair or replace defective equipment which may be contributing to or causing the drop in temperature and/or provide additional clothing and/or bedding to inmates for adequate warmth during any periods of replacement or repair, or unusually cold weather.

B. **Lighting and Ventilation.** The Department shall maintain and provide lighting and ventilation in each facility which is in accordance with applicable state standards.

C. **Nonsmoking Areas.** The Department shall provide nonsmoking areas in each facility, and shall, where existing resources permit, accord a nonsmoking inmate preference to be housed in a cell with another nonsmoking inmate.

D. **Plumbing.**

1. The Department shall ensure that each cell is equipped with a sink with hot and cold running water, unless the cell is specifically designed for short-term housing of persons who are considered a danger to themselves, in which case water shall be readily available to the inmate.

2. The Department shall ensure that there is a working toilet in each cell or living unit. The Department has discretion, however, to design and provide special toilets to minimize the possibility of physical injury to inmates housed in specially designated cells or living units.

3. The Department shall ensure that each inmate held in a holding cell is accorded reasonable access to running water and toilet facilities upon request.

-5-

**4.** The Department shall provide an adequate number of toilets, sinks and showers as required by applicable codes and maintain them in proper working order, and make all necessary repairs or renovations in a timely fashion.

**E.** **Gymnasium/Recreation Area.** In all future facilities, the Department shall ensure that there are designed and built sufficient gymnasiums and recreation areas to provide adequate recreational opportunities for the number of inmates to be housed in the facility, given consideration of the location and security level of the facility. Adequate recreational opportunities include the following: the opportunity to participate in indoor and outdoor individual and team sports where appropriate (e.g., basketball, softball, and the like); the availability of and opportunity to use fixed or movable indoor exercise equipment (e.g., exercise bicycles and weight training equipment); the availability of space for calisthenics, jogging, track, or other similar individual activities, and the opportunity to engage in them.

**F.** **Law Library.** In all future facilities, the Department shall ensure that adequate space is devoted to the use of a law library of sufficient size to accommodate the requirements of Section V.G of this agreement.

**G.** **Cell Size and Dayroom Space.** In all future facilities, the Department shall ensure that general population cells or rooms are a minimum of 60 square feet for one inmate, 80 square feet for two inmates, and 140 square feet for three inmates.

-6-

Cells which are used for inmates locked down more than 10 hours per day must have a minimum of 80 square feet for one inmate, 90 square feet for two inmates, and 150 square feet for three inmates. Further, a minimum of 35 square feet of dayroom space or leisure area must be provided for each inmate in the facility in addition to cell or room space. Future facilities may not provide for the housing of inmates in dormitories, except for minimum security (Level I) facilities, minimum custody housing, or misdemeanant housing, which may include dormitories of not more than 36 beds each, with a minimum of 40 square feet per inmate in the sleeping area, exclusive of bathroom and dayroom space, and a clear floor-to-ceiling height of not less than eight feet.

H.  **Program Support Space.**  In each new facility, the Department shall ensure that adequate space is designed to accommodate the rehabilitative, educational, health care and vocational opportunities required of this agreement.

I.  **Visitation Rooms.**  In each new facility, the defendants shall ensure that visitation areas are designed in such a manner as to provide adequate contact visitation for the size of the population at the facility, given the right to visitation provided inmates by this agreement.

J.  **Attorney-Client Rooms.**  In each new facility, the Department shall ensure that sufficient individual rooms with adequate seating and a table are provided for private attorney-client communication, given the size of the facility, its location, and the population of inmates housed at the facility.

-7-

K. **Staff Space.** In each new facility, the Department shall, whenever possible, provide an area to accommodate staff briefing, training, and breaks, and provide sufficient staff lavatories.

L. **New Facilities for Women.**

1. The Department shall establish an additional facility or devote all or part of an existing facility for long-term sentenced women to be in operation no later than July 1, 1994. The facility or unit shall be of such size as necessary to accommodate the population of long-term sentenced women projected to the year 2010, and to provide the programs and services required by this agreement. In the event that the Department does not, by July 1, 1991, receive sufficient funding to design the facility or, by July 1, 1992, receive sufficient funding to construct the facility, plaintiffs shall be entitled to bring an action challenging the Department's policies and practices toward long-term sentenced women offenders.

2. The Department shall, within 90 days of opening said facility, return to the state any long-term sentenced female inmate who requests return to the state of Alaska to complete her sentence, unless an individualized determination is made that a particular female inmate's presence at the facility presents a substantial risk of harm to the inmate or others. Such a determination may be challenged by the inmate at her classification hearing regarding the transfer.

-8-

3. After the opening of said facility, the Department may only transfer a female inmate out-of-state based on gender neutral criteria.

## IV. OPERATIONAL REQUIREMENTS.

A. **Staffing.** The Department shall ensure that all facilities are staffed with a sufficient number of trained personnel to provide for secure facility management, and the provision of rights, opportunities and services to inmates as called for in this agreement. Medical staffing requirements shall be determined by the Department with the consultation of responsible health care personnel. $\underline{2}/$

B. **Staff Training.** The Department shall ensure that all security staff are adequately trained in security and emergency matters (e.g. C.P.R.), and that refresher training and testing of skills is regularly provided, where appropriate. The Department shall ensure that all correctional staff who provide direct counseling, rehabilitation, library, educational, medical, or mental health services to inmates are adequately trained in the specific field or fields in which they provide service. The Department shall also ensure that those correctional staff

---

$\underline{2}/$ Unless otherwise provided for in this agreement, health care personnel is defined as any: physician, dentist, psychologist, optometrist, osteopath, podiatrist, physician's assistant, or advanced nurse practitioner authorized by law to provide health care treatment. It also includes a registered nurse, licensed practical nurse, or medical technician operating under the direction or supervision of one of the above-named health care personnel.

-9-

providing specialized services (pre-release planning, hearing advisors, compliance) are trained to deliver those services.

C.    Fire and Life Safety.

1.    The Department shall conduct weekly inspections and visual system checks of fire and emergency equipment to ensure compliance with federal, state and local fire codes. More in-depth inspections shall be conducted as required by applicable codes. The Department shall provide for a system of facility fire prevention, safety, and control procedures through the use of efficient fire protection services and equipment, the implementation of effective fire drills and evacuation plans, and the utilization of appropriate fire safety codes.

2.    The Department may place reasonable limits on the number of personal possessions, including books, magazines, and legal materials kept by an inmate in his or her living area for fire safety, security or health reasons.

D.    Sanitation.

1.    The Department shall provide food service in conformance with applicable state and federal codes. Each facility shall conduct preassignment medical examinations for food service personnel to ensure they are free from communicable diseases. The Department shall provide temperature-controlled food storage areas at each facility.

2.    In all dormitories, the Department shall separate toilet facilities from the living area by providing privacy screens.

-10-

E.   Inmate   Personal   Hygiene.   Each   inmate   shall   be permitted to shower at least three times per week. The Department shall issue to each inmate basic items of personal hygiene at or near the time of admission. These shall include, at a minimum, a toothbrush, toothpaste, soap, comb and, for female inmates, feminine hygiene items. If an inmate is transferred after admission, and if these items are not transferred within 12 hours of the inmate's arrival at the new facility, these items shall immediately be provided to the inmate at the receiving facility's expense. The opportunity to use an individual razor will be provided daily.

F.   Inmate Clothing.

1.   The Department shall provide at least one full set of clean, well-fitting clothing to each inmate at the time of booking or after arraignment if the inmate so desires.

2.   The Department shall provide each inmate at least two sets of institutional clothing per week, or conduct a clothing exchange at least two times per week. However, the Department shall provide three sets of underwear and socks per week.

3.   Pretrial detainees, except those in punitive segregation or those placed in administrative segregation as a threat to the security of the facility, shall have the right to wear their personal clothing in their living units and in such other areas of the facility where security does not require a clothing restriction.

-11-

4. In the discretion of the superintendent or his or her superior, sentenced offenders who are classified medium custody or less may wear their personal clothing in their living units. This discretion of the superintendent also applies to an inmate who has been sentenced for an offense but is awaiting disposition on additional charges or probation or parole revocation.

5. An inmate's personal clothing shall be laundered at the Department's expense as long as the inmate signs a waiver of liability for loss or damage, properly marks or tags the clothing, and the clothing does not require special laundering. As an alternative, the Department may make laundry facilities available to inmates at the Department's expense.

6. Inmates entitled to wear personal clothing shall be allowed to have at least two sets of personal clothing in their possession.

G. **Bedding.**

1. The Department shall provide each inmate with a clean, intact mattress and pillow of a type that fully conforms to applicable fire and safety codes. Each facility will maintain or have access to a means of cleaning mattresses and pillows.

2. The Department shall provide each inmate with a bed off the floor, unless documented individual health or safety concerns (e.g., suicide risk) dictate otherwise.

3. The Department shall provide each inmate with two sheets, a pillowcase, and a sufficient number of blankets to

-12-

provide comfort under existing temperature conditions, unless documented individual health or safety concerns (e.g., suicide risk) dictate otherwise.

    4. The Department shall exchange all sheets and pillowcases once each week, or more frequently as resources allow. Each inmate shall be entitled to a clean towel at least three times per week.

    H.   Housing.

    1. The Department shall isolate from the general population the following persons:

    (a) Those under the influence of alcohol or drugs;

    (b) Those currently violent;

    (c) Those who request isolation and for whom a valid reason exists; and

    (d) Those who are a substantial and immediate threat to themselves or others.

    2. Except as provided in Paragraph 3 of this section, the Department shall house an inmate sentenced for a misdemeanor separately from an inmate sentenced for a felony, as present and future resources permit. This provision is satisfied in a modular living unit by providing separate cells for misdemeanants and felons unless facility resources or design permit separation by modular living unit.

    3. For purposes of Paragraph 2 of this section:

-13-

Exhibit A Page 18 of 115

(a) A person incarcerated for a combination of felony and misdemeanor offenses, or for a probation or parole revocation where the underlying offense was a felony, is considered a sentenced felon.

(b) A person presently incarcerated for a misdemeanor who, within the three years preceding the present incarceration, has either been incarcerated for a felony, or who has been under probation or parole supervision following incarceration for a felony, may be considered a sentenced felon.

4.   Pretrial detainees shall be housed separately from sentenced felons.   This provision is satisfied in a modular living unit by providing separate cells for pretrial detainees and sentenced felons unless facility resources or design permit separation by modular living unit.  Once a pretrial detainee has been convicted of a felony offense, the Department may exercise its discretion as to where the prisoner is housed pending sentencing based upon available resources and sound correctional management.

5.   Except as required by law, the Department shall refuse to admit anyone to a facility who is unconscious or in immediate need of medical attention until appropriate medical attention has been provided the person, and admission into the facility has been approved by the treating physician or other health care personnel.

-14-

I.  Food Services.

1.   The Department shall make provision for special religious, medical and vegetarian diets. Alaska Native foods will be permitted on special occasions such as potlatches and other times as resources and appropriate regulatory agencies permit.

2.   The Department shall conduct a nutritional analysis of its institutional menus, including the adequacy of the food provided for religious, vegetarian and medical diets. This analysis must be reviewed annually or whenever the Department modifies an institutional menu.

3.   The Department shall serve food at appropriate temperatures and utilize heated food service trays or hot carts where necessary to maintain appropriate temperatures.

4.   The Department shall regularly inspect all food service equipment and facilities.

5.   The Department shall replace or repair functionally obsolete kitchen equipment as present and future resources permit.

6.   The Department shall provide community dining areas for general population inmates, except where safety or security concerns justify otherwise. Each facility shall ensure sufficient seating to accommodate all inmates designated to eat in the dining area. This does not preclude meals being served in shifts.

-15-

7. The Department shall provide inmates three nutritious and well balanced meals every 24 hours, two of which must be hot meals. On Saturdays, Sundays and holidays, the Department may provide two hot meals and a snack. No more than 14 hours shall elapse between the last and the next meal or snack.

J. Medical and Dental Care.

1. All inmates shall be entitled to necessary medical, dental, and mental health services comparable in quality to those available to the general public. The Department may utilize the most cost effective method of treatment to meet necessary medical needs; however, the primary basis for any medical decision shall be medical need and not cost.

2. The Department shall provide the same quality of health care to unsentenced inmates as sentenced inmates. The Department shall provide those health care services which are required to prevent or alleviate pain and suffering, including those procedures deemed necessary to aid in increasing the level of functioning throughout the inmate's sentence, such as prosthetic devices. The Department is not obligated to provide health care services to improve cosmetic appearance or to permit functioning at levels not directly related to rehabilitation, services for conditions that were long standing prior to incarceration and not deemed necessary to alleviate pain and suffering, or extraordinary, experimental services. The Department will not deny medical care which is necessary to

-16-

enable an inmate to participate in or benefit from rehabilitative services.

3.     Any health care treatment offered or provided at a facility by health care personnel other than a physician, dentist, psychiatrist, psychologist, optometrist, osteopath, podiatrist, physician's assistant, or advanced nurse practitioner, must be performed pursuant to written, standing or direct orders by personnel authorized by law to give such orders.

4.     Health care treatment decisions shall be made by designated department or contract health care personnel. Security and administrative staff may not interfere with health care treatment decisions.     However, if a treatment decision would result in a significant security threat (e.g., use of crutches by a violent inmate), the security staff may have input on the need for a medically acceptable alternative form of treatment. Security policies applicable to facility personnel also apply to health care personnel.

5.     Except as set out below, no treatment, non-routine examination or procedure may be undertaken without first obtaining the informed consent of the inmate.     Informed consent is the agreement by the inmate to the treatment, non-routine examination or procedure after being provided the material facts regarding the nature, consequences, risks and alternatives concerning any proposed treatment, non-routine examination or procedure.     Informed consent may be dispensed with in the discretion of the treating health care provider when the medical

-17-

Exhibit A Page 22 of 115

condition of the inmate (i.e., emergency) or public health concerns (e.g., communicable diseases) require immediate intervention, or when the inmate lacks the capacity to give consent as determined by a physician.

6. The Department shall notify family members or others designated by the inmate in case of serious illness or injury. The Department shall obtain permission from the inmate prior to notification whenever possible.

7. The Department shall perform a health appraisal on each inmate within 14 days after the inmate's initial admission to the correctional system unless the inmate has received a health appraisal within the previous 90 days and a new appraisal is not recommended or required by health care personnel at the receiving facility. The health appraisal shall be in accordance with Section 2-4291 of the ACA Standards for Adult Correctional Facilities (1981).

8. The Department shall provide eyeglasses as prescribed by an optometrist to pretrial detainees incarcerated for a period of longer than 15 days who are determined by appropriate Department health care personnel to be in need of corrective lenses, and who request them.

9. The Department's sick call shall be conducted by a physician or other qualified health care personnel, and shall be available as follows:

(a) In facilities of less than 50 inmates, at least one day per week;

-18-

Case 3:25-cv-00086-SAB    Document 46-1    Filed 07/14/25    Page 23 of 36

(b) In facilities of 50 to 200 inmates, at least three days per week; and

(c) In facilities of over 200 inmates, at least five days per week.

10. Housing assignments, program assignments, disciplinary measures, and transfers to or from facilities regarding any inmate diagnosed as having a significant medical illness or condition must be approved by responsible health care personnel. Health care personnel may only disapprove such actions for sound medical reasons.

11. The Department shall have an internal appeal procedure to independently review all medical decisions made regarding health care to inmates whenever treatment has been recommended by a consulting physician and has been denied by the Department or the Department's health care operations officer, or when an inmate requests review of the treatment.

12. After an inmate has exhausted the Department's grievance and internal appeal systems, the Department shall refer the inmate to the Division of Occupational Licensing for investigation of any complaints alleging malpractice by health care personnel. This section does not limit an inmate's right of access to the courts regarding allegations of inadequate medical care.

13. The Department may seek to have medical expenses provided or paid for by third-party coverage (e.g., Veteran's Administration, Alaska Native Services Hospital, union health

-19-

plan coverage, Medicare or Medicaid, major health care insurance coverage, or public assistance benefits).

K.  Mental Health Services

1.  The Department shall perform a mental status screening of each inmate within 24 hours of the inmate's initial admission to the correctional system.   The screening shall be conducted by health care staff trained to identify the possibility of mental illness or the need for immediate mental health care.   If the mental status screening indicates that an inmate may be suffering from mental illness or is in need of immediate mental health care, the inmate shall promptly be referred for evaluation and diagnosis by a clinical psychologist or psychiatrist or a qualified mental health professional acting under the clinical supervision of a clinical psychologist or psychiatrist.   Such supervision requires a timely on-site or telephonic review of a diagnosis and treatment for a mental illness within 72 hours of the diagnosis or treatment, excluding weekends and holidays.

2.  (a) The Department shall ensure that any inmate identified as suffering from a major mental illness receives the appropriate mental health treatment required to address the inmate's needs.   The use of psychotherapeutic medication shall not be used in lieu of counseling or other psychiatric services for an inmate unless part of a treatment plan initially prescribed by a physician or psychiatrist and reviewed monthly by a physician, psychiatrist, other qualified mental health

-20-

professional, physician's assistant, or advanced nurse practitioner; or unless required in an emergency to prevent the inmate from causing injury to self or others, or being harmed by others within the facility.

(b) The use of physical restraints or segregated housing shall not be used in lieu of counseling or other psychiatric services for an inmate suffering from a mental illness unless part of a treatment plan prescribed and reviewed monthly by a qualified health care or mental health care professional, or unless in an emergency.

3. The Department shall assure that mental health professional services are available to inmates at each facility, and shall ensure that the same level of clinical supervision of mental health professionals is provided by staff or contract psychiatrists or psychologists as set out in Paragraph K.1 of this section.

4. By January 1, 1991, the Department shall begin to implement a 30-bed forensic unit to provide intensive inpatient mental health treatment for acutely and chronically mentally ill inmates who cannot adequately function in the general inmate population. This facility shall be staffed by at least one full-time equivalent member of the forensic consultation team (or other qualified psychiatrist, psychologist, or psychiatric social worker if the forensic team is no longer available to the Department), one full-time equivalent mental health clinician or clinical social worker, sufficient full or part-time medical

-21-

staff to provide supervised 24-hour medical care, the necessary correctional staff to provide 24-hour security in the unit, and the necessary program staff to provide programming to the inmates in the forensic unit. The forensic unit will be under the clinical oversight of a psychiatrist.

5. Inmates suffering from acute or chronic mental illness who in the opinion of the treating psychologist or psychiatrist cannot be properly treated at the forensic unit because of the degree or duration of the illness may be transferred to the Alaska Psychiatric Institute or another 24-hour medical facility providing psychiatric care. The Department has the obligation of ensuring that such inmates receive the medical care, security, programming, rights and opportunities substantially similar to those provided by this agreement consistent with the mental health needs of the inmate.

6. An inmate receiving mental health treatment at the forensic unit shall be entitled to the same rights and benefits provided other inmates under this agreement unless the treating or consulting psychiatrist or psychologist determines that participation in a particular activity is inconsistent with the inmate's treatment plan. If such a decision is made, it must be reviewed every thirty (30) days by the treating psychiatrist, psychologist or mental health clinician, or appropriate health care staff if the reasons for restricting the inmate's activities are medical.

-22-

7.  Plaintiffs shall be entitled to bring an action to determine whether an appropriate level of mental health services has been or is being provided acutely mentally ill inmates, if, by July 1, 1990: (a) the Department does not receive adequate funding to begin fully implementing the forensic unit by January 1, 1991, and (b) the Department fails to present a plan to begin full implementation by January 1, 1991, notwithstanding inadequate appropriation.

8.  The Department shall ensure that an individualized pre-release plan is established for all sentenced inmates suffering from major mental illnesses who are incarcerated longer than 180 days. For inmates who are incarcerated less than 180 days, this pre-release assistance shall be provided only upon the request of the inmate, but the Department shall advise the inmate that such assistance is available. The Department shall coordinate with the community mental health centers and other appropriate agencies to help assure a continuum of care for mentally ill inmates who are released from custody.

9.  Given the urgent need for a halfway house for mentally ill offenders, the Department shall submit to the Legislature a funding request for the establishment of such a facility, and shall have the continuing obligation to seek such funding until sufficient monies are appropriated to fully open and staff the facility, or until a facility or program which addresses this need is otherwise established.

-23-

10. By July 1, 1991, the Department shall conduct an assessment of the mental illnesses and mental health needs of its inmate population to determine what additional resources and staffing may be required to provide necessary treatment and care for those inmates suffering from major mental illnesses. The Department shall prepare and submit to the Legislature funding requests for the staffing or the establishment of any new facilities that may be necessary to provide appropriate housing, care and programming for seriously mentally ill offenders, and shall be under a continuing obligation to seek such funding until sufficient monies are appropriated to provide the necessary services.

11. In cases where an inmate has made an apparent suicide attempt, the Department shall make every effort to provide medical or mental health care personnel to promptly assess the inmate's medical or mental health needs, and provide appropriate treatment.

## V. RIGHTS AND OPPORTUNITIES
## TO BE PROVIDED INMATES.

### A. Exercise and Recreation.

1. The Department shall provide inmates with at least seven hours per week of recreation, which must be available at least five days per week.

2. Recreation shall be offered outdoors, except during severe weather conditions. A mix of outdoor and indoor recreation may be arranged to accommodate staff resources and

-24-

scheduling limitations so long as indoor recreation space is adequate and outdoor recreation is offered no less than 50% of the time. An inmate individually determined, as defined by Paragraph II.C, to be an escape, smuggling or security risk shall be afforded recreation in a gymnasium or exercise room.

(a) An inmate under medical care shall have the same opportunity for recreation as an inmate in general population, except to the extent that health care personnel determine that a particular activity or activities present a danger to the inmate's health.

3. An inmate in administrative segregation shall have the same right to recreation as set out in Paragraph A.2 of this section, at least one hour per day, seven days per week.

4. An inmate in punitive segregation shall have the right to out-of-cell exercise at least one hour per day, and shall have access to fitness equipment sufficient to exercise the large muscle groups in an area large enough to reasonably accommodate the equipment and activity.

B. Visitation.

1. (a) Except as set out in this section, the Department may not place restrictions on who may visit an inmate unless there exist reasonable grounds to believe that the visitor will jeopardize the safety, security, or order of the facility.

(b) The Department may, however, place reasonable restrictions on visitation by a minor who is not a child of the inmate, but only when an individualized determination, as defined

-25-

Exhibit A Page 30 of 115

by Paragraph II.C, has been made that the restriction is necessary to protect the minor against an identifiable risk presented by visitation with the inmate, given the visitor's age, sex, and relationship to the inmate.

(c) Visitation with a minor who is a child of the inmate may not be restricted as set out in (b) of this subsection unless parental rights to reasonable visitation have been terminated or otherwise limited pursuant to a divorce or child in need of aid proceeding, or other court order.

(d) An order of the court precluding visitation during probation applies during incarceration.

2. A minor visitor who is a family member of an inmate must be accompanied by an adult who is a member of the inmate's family or extended family. A minor visitor who is not a family member of the inmate must be accompanied by a parent or legal guardian.

3. A non-family visitor who has been released from a correctional facility within the preceding 60 days may not visit an inmate unless approval is granted by the facility superintendent where the visit is to occur. A parolee who has been prohibited from contact by the Parole Board may not visit an inmate.

4. An inmate who is denied visitation with any person or whose visit with a minor is restricted must be provided with a statement of the reasons and may grieve the denial or restriction directly to the regional director by going through the facility grievance coordinator.

-26-

5.    The Department shall provide each inmate the opportunity for contact visitation at least one hour per week unless the inmate is in punitive segregation, or who has been individually determined, as defined by Paragraph II.C, to be an escape, smuggling, or security risk if permitted contact visitation.

6.    The Department may limit or deny contact visitation within the first 30 days of incarceration for the purposes of inmate orientation and conducting a security clearance of the inmate and potential visitors.    If both orientation and the security clearances are satisfactorily completed prior to the end of the 30-day period, an inmate shall be eligible for contact visitation at that time.

7.    A former pretrial detainee who has been sentenced, or an inmate who has been transferred from one facility to another, shall not lose his or her eligibility for contact visitation solely because of this change in status.

8.    Upon conviction of a disciplinary infraction, an inmate's contact visitation may be limited or suspended and secure visitation may be limited to immediate family members only.

C.    Telephone Communication

1.    The Department shall ensure that telephones are accessible to the general inmate population several hours per day for phone calls.    Inmates in administrative segregation are entitled to access to telephones upon written request, except for

-27-

an inmate whose access to a phone must be limited due to demonstrated telephone abuse established by the Department pending or at the hearing required to be held under Paragraphs VII.B.3 and B.4 of this agreement. Notwithstanding such a limitation, those inmates shall be entitled to access to a telephone to call an attorney or the Ombudsman's office upon written request. Inmates in punitive segregation are limited to telephone calls to attorneys and the Ombudsman's office.

2. (a) The Department may install coinless pay phones in each facility for local and long distance calls which provide caller identification for each call. No charge shall be assessed to the caller or recipient for local calls. At least seven speed call numbers which bypass caller identification shall be installed in each phone for calls to the local offices of the Public Defender, Public Advocate, Alaska Legal Services, Ombudsman, Department of Revenue, Division of Public Assistance, and Legislative Information Office, where such local offices exist.

(b) If, after one year of operation on a statewide basis, revenues from toll calls are insufficient to pay for the cost of local calls in the coinless pay phone system, the Department reserves the right to assess a charge of not more than $.50 per call for local calls. If the Department exercises this right, the plaintiffs have the corresponding right to challenge any charge as to its amount and necessity, and to propose less costly or restrictive alternatives.

-28-

Case 3:25-cv-00086-SAB    Document 46-1    Filed 07/14/25    Page 33 of 36

3. The Department may not prohibit telephone calls between inmates who are immediate family members unless an individualized determination is made, as defined in Paragraph II.C, that the safety of a person or the security of the correctional facility requires a restriction on the communication. Any restriction imposed shall be no broader than necessary to address the safety or security concerns. Inmates may be required to pay for the call, if long distance. The Department is not obligated to permit more than weekly telephone contact between immediate family members, except in case of emergency as authorized by the Superintendent.

4. The Department shall ensure that inmate telephone calls to an attorney can be made during normal office hours, and shall provide a message phone in each facility by which attorneys can leave recorded messages for inmates. These messages shall be posted in an area accessible to all inmates or delivered to the appropriate inmate once per day, except on weekends and holidays. The Department may use inmates to implement this system and may place reasonable limits on the length of messages to accommodate the number of attorney calls to a facility. The Department may not restrict the number of attorneys an inmate may call.

5. The Department may not monitor the telephone call of a pretrial detainee, or the telephone call by any inmate to or from an attorney, except when authorized by court order.

-29-

## D.   Mail Communication

1.    The Department may not place limits upon the volume of an inmate's incoming or outgoing mail, except that limitations may be placed on the use of the mails to conduct or operate an inmate's business approved under Paragraph I of this section.

2.    (a) The Department shall deliver mail received for an inmate within 24 hours of receipt and packages within 48 hours of receipt, excluding weekends and holidays.

(b) The Department will develop and make available to all inmates a list of property authorized for retention in a correctional facility. An inmate may receive only those items authorized for retention in a correctional facility.

(c) An inmate must obtain advance approval from the facility to purchase or order any item from a commercial vendor or supplier for delivery to the correctional facility. A package or an envelope containing items purchased or ordered by or for an inmate which has not been pre-approved by the Department will be returned to the sender unopened; or, if opened, at the inmate's expense.    Advance approval is not required for the purchase of or subscription to books, magazines or newspapers received by mail.

(d) The Department may require that family or friends of inmates wishing to mail a gift to an inmate, must first check with the facility to verify that the gift is authorized for retention and provide notification when the gift

-30-

is or will be sent.  The facility shall record this information to ensure delivery to the inmate following receipt.

(e)  For security reasons, the Department may restrict purchase or receipt of electronic equipment to those items available through the commissary.

3.  The Department may not restrict communication between two inmates by mail unless the mail falls into one of the categories listed in 22 AAC 05.520(c)(1).  The restriction imposed shall be no broader than necessary to address safety or security concerns.

4.  Except for the categories set out below, the Department may not limit or restrict the receipt by inmates through the mail of paperback books and magazines from family and friends, but may limit the number of books and magazines kept by an inmate in his or her living area as provided by Paragraph IV.C.2.  However, the Department may inspect reading or pictorial materials to determine if they contain contraband; material which could reasonably be expected to aid in escape, incite violence, theft or destruction of property in the facility; material which is obscene as defined in 22 AAC 05.660; or which depicts or describes procedures for the brewing of alcoholic beverages or manufacture of drugs, weapons or explosives.

5.  The Department may not open any mail addressed to an inmate which is identifiable as coming from any person or organization listed in 22 AAC 05.520(b) (privileged mail), except in the inmate's presence and only to search for contraband,

-31-