John A. Freedman (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel. 202-942-5000
john.freedman@arnoldporter.com
*Attorney for Plaintiffs*
*Additional counsel listed on signature page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RORY VAIL, JIM ADAMS, CHRISTOPHER NICKALASKEY, CLARENCE SHIRLEY, STEPHANIE OLRUN, NICK EPHAMKA, JR., ANTHONY GILLIAM, GAVIN CHRISTIANSEN, JEREMY WHITLOW, AND NAOMI HOLT, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL DUNLEAVY, GOVERNOR OF ALASKA; JENNIFER WINKELMAN, COMMISSIONER OF THE ALASKA DEPARTMENT OF CORRECTIONS; AND TRAVIS WELCH, DEPARTMENT OF CORRECTIONS DIRECTOR OF HEALTH AND REHABILITATION SERVICES, IN THEIR OFFICIAL CAPACITIES, <br><br> Defendants. | Case No. 3:25-cv-00086-SAB <br><br> **ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ..................................................................................................... 4

    I.   *Cleary* does not prevent incarcerated people from suing in federal court to protect their federal constitutional right to adequate medical care. ............................................. 4

        A.   This case is not barred by claim preclusion or issue preclusion. ......................... 6

            1.   Plaintiffs' claims are not barred by claim preclusion. ....................... 7

               a.   Plaintiffs' claims are not the same as those raised in *Cleary*. ..................... 8

               b.   *Cleary* did not involve the same parties as in this case. .............................. 10

               c.   Plaintiffs were not adequately represented by *Cleary* class counsel. .......... 11

            2.   Issue preclusion does not bar the issues raised in the Complaint. .................. 16

            3.   Applying claim or issue preclusion would violate jurisprudential norms, fairness, and logic. ........................................................................ 19

        B.   Neither *Rooker-Feldman* nor 28 U.S.C. § 1738 bars Plaintiffs' claims. ............ 21

    II.   This court should not abstain from considering this case. ..................................... 23

    III.   Governor Dunleavy is an appropriate defendant to this suit under *Ex parte Young*, and the Eleventh Amendment is no bar to Plaintiffs' claims. ........................... 26

    CONCLUSION ............................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*281 Care Comm. v. Arneson*,
  638 F.3d 621 (8th Cir. 2011) ....................................................................... 31

*Antenor v. Dep't of Corr.*,
  462 P.3d 1 (Alaska 2020) .............................................................................. 4

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ....................................................................... 27

*Arpin v. Santa Clara Valley Transp. Agency*,
  261 F.3d 912 (9th Cir. 2001) ......................................................................... 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 4

*Austin v. Fulton Ins. Co.*,
  498 P.2d 702 (Alaska 1972) ........................................................................ 17

*Barber v. State, Dep't of Corr.*,
  393 P.3d 412 (Alaska 2017) ........................................................................ 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 4

*Blake J. v. State*,
  554 P.3d 430 (Alaska 2024) ........................................................................ 16

*Blake v. Gilbert*,
  702 P.2d 631 (Alaska 1985) .......................................................................... 7

*Bounds v. Smith*,
  430 U.S. 817 (1977) ..................................................................................... 20

*Brown v. Plata*,
  563 U.S. 493 (2011) ..................................................................................... 27

*Bullock v. Wells Fargo Bank, N.A.*,
  No. 4:23-cv-00017-SLG-KFR, 2024 WL 2138384 (D. Alaska Apr. 18,
  2024) .............................................................................................................. 7

*Coal. To Defend Affirmative Action v. Brown,*
  674 F.3d 1128 (9th Cir. 2012) ............................................................. 26, 29

*Cogan v. Trabucco,*
  114 F.4th 1054 (9th Cir. 2024) ................................................................... 21

*Coleman v. Newsom,*
  131 F.4th 948 (9th Cir. 2025) ..................................................................... 27

*Colorado River Water Conservation Dist. v. United States,*
  424 U.S. 800 (1976)..................................................................................... 25

*Comm'r v. Sunnen,*
  333 U.S. 591 (1948)............................................................................... 17, 18

*Cummings v. Connell,*
  402 F.3d 936 (9th Cir. 2005), *amended*, No. 03-17095, 2005 WL
  1154321 (9th Cir. May 17, 2005) ......................................................... 12, 16

*Dixon v. Pouncy,*
  979 P.2d 520 (Alaska 1999).......................................................................... 7

*Ex parte Young,*
  209 U.S. 123 (1908)..................................................................................... 26

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
  544 U.S. 280 (2005)..................................................................................... 21

*Felder v. Casey,*
  487 U.S. 131 (1988)....................................................................................... 5

*Ferguson v. State, Dept. of Corr.,*
  816 P.2d 134 (Alaska 1991)...............................................................*passim*

*Gates v. Deukmejian,*
  987 F.2d 1392 (9th Cir. 1992) ..................................................................... 27

*Gonzales v. Cassidy,*
  474 F.2d 67 (5th Cir. 1973) ......................................................................... 15

*Hansberry v. Lee,*
  311 U.S. 32 (1940)....................................................................................... 10

*Hartmann v. Cal. Dep't of Corr. & Rehab.,*
  707 F.3d 1114 (9th Cir. 2013) ..................................................................... 27

iii

*Hernandez v. City of Los Angeles*,
    624 F.2d 935 (9th Cir.1980) ..................................................................... 16

*Hertz v. State, Dep't of Corr.*,
    230 P.3d 663 (Alaska 2010)..................................................................... 3

*Hertz v. State, Dept. of Corr.*,
    869 P.2d 154 (Alaska 1994)..................................................................... 5

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ................................................................... 13

*Hiser v. Franklin*,
    94 F.3d 1287 (9th Cir. 1996) ...........................................................*passim*

*Hoptowit v. Spellman*,
    753 F.2d 779 (9th Cir. 1985) ................................................................... 27

*Jackinsky v. Jackinsky*,
    894 P.2d 650 (Alaska 1995)..................................................... 8, 9, 10, 18

*Janjua v. Neufeld*,
    933 F.3d 1061 (9th Cir. 2019) ................................................................. 18

*Jeremiah M. v. Crum*,
    695 F. Supp. 3d 1060 (D. Alaska 2023) .................................................. 22

*Johnson v. De Grandy*,
    512 U.S. 997 (1994).................................................................................. 22

*Jordan v. Gardner*,
    986 F.2d 1521 (9th Cir. 1993) (en banc) ................................................. 27

*L.A. Cnty. Bar Ass'n v. Eu*,
    979 F.2d 697 (9th Cir.1992) .................................................................... 26

*Lance v. Dennis*,
    546 U.S. 459 (2006).................................................................................. 21

*Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*,
    714 F.2d 946 (9th Cir. 1983) ................................................................... 30

*McElroy v. Kennedy*,
    74 P.3d 903 (Alaska 2003)........................................................................ 8

Case 3:25-cv-00086-SAB    Document 61    Filed 08/29/25    Page 5 of 44

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) .................................................................... 27

*Montana v. United States*,
    440 U.S. 147 (1979) ................................................................................ 17

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989) ........................................................................... 24, 25

*Noel v. Hall*,
    341 F.3d 1148 (2003) ............................................................................... 23

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ................................................................................ 10

*Parsons Steel, Inc. v. First Alabama Bank*,
    474 U.S. 518 (1986) ................................................................................ 23

*Patsy v. Bd. of Regents of State of Fla.*,
    457 U.S. 496 (1982) .................................................................................. 5

*Perez v. Campbell*,
    402 U.S. 637 (1971) .................................................................................. 5

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................ 11

*Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v.
    Labrador*,
    122 F.4th 825 (9th Cir. 2024) .................................................................. 27

*Plumber v. Univ. of Alaska Anchorage*,
    936 P.2d 163 (Alaska 1997) ....................................................................... 7

*Procunier v. Martinez*,
    416 U.S. 396 (1974) ................................................................................ 20

*R. W. v. Columbia Basin Coll.*,
    77 F.4th 1214 (9th Cir. 2023) .................................................................. 27

*Ross v. Alaska*,
    189 F.3d 1107 (9th Cir. 1999) .................................................................... 7

*Smith v. Cleary*,
    24 P.3d 1245 (Alaska 2001) ...............................................................*passim*

v

*Smith v. Stafford*,
189 P.3d 1065 (Alaska 2008)...................................................................... 16

*Snead v. Wright*,
427 F. Supp. 3d 1133 (D. Alaska 2019) ........................................................ 4

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013)................................................................................. 23, 24

*State, Dep't of Revenue v. BP Pipelines (Alaska) Inc.*,
354 P.3d 1053 (Alaska 2015)................................................................. 16, 18

*Storseth v. Spellman*,
654 F.2d 1349 (9th Cir. 1981) .................................................................... 20

*Strong v. Williams*,
435 P.3d 872 (Alaska 2018)................................................................... 18, 19

*Sykes v. Lawless*,
474 P.3d 636 (Alaska 2020) ....................................................................... 19

*Taylor v. Delatoore*,
281 F.3d 844 (9th Cir. 2002) ...................................................................... 20

*Taylor v. Sturgell*,
553 U.S. 880 (2008)............................................................................... 7, 10

*Valdivia v. Schwarzenegger*,
599 F.3d 984 (9th Cir. 2010) ...................................................................... 27

*W. Oil & Gas Ass'n v. EPA*,
633 F.2d 803 (9th Cir. 1980) ...................................................................... 16

*White v. Symetra Assigned Benefits Serv. Co.*,
No. C20-1866 MJP, 2021 WL 3472408 (W.D. Wash. Aug. 5, 2021)........................ 22

*Wolff v. McDonnell*,
418 U.S. 539 (1974)................................................................................... 20

*Younger v. Harris*,
401 U.S. 37 (1971).................................................................................... 24

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) ...................................................................... 21

vi

**Alaska Constitution**

Alaska Const. Art. III § 16 ........................................................................... 28

Alaska Const. Art. III § 23 ........................................................................... 28

Alaska Const. Art. III § 24 ........................................................................... 28

**Statutes**

28 U.S.C. § 1738 ................................................................................... 21, 23

Alaska Prisoner Litigation Reform Act, Alaska Stat. Ann. § 09.19.200 ..................... 3, 5

**Other Authorities**

Administrative Order No. 77 (July 12, 1983), available at
    https://gov.alaska.gov/admin-orders/administrative-order-no-77/ ............................. 29

Administrative Order No. 138 (Sept. 1, 1993), available at
    https://gov.alaska.gov/admin-orders/administrative-order-no-138/ ........................... 29

Administrative Order No. 207 (January 22, 2003), available at
    https://gov.alaska.gov/admin-orders/administrative-order-no-207/ ........................... 29

Administrative Order No. 283 (February 16, 2017), available at
    https://gov.alaska.gov/admin-orders/administrative-order-no-283/ ........................... 28

Alaska DOC Policies and Procedures 807.01–24, available at
    https://public.powerdms.com/AKDOC/tree ................................................... 8

Handbook on Alaska State Government, available at
    https://akleg.gov/docs/pdf/handbook.pdf ...................................................... 28

# TABLE OF EXHIBITS

| Exhibit A | Order issued in the *Cleary* litigation, Alaska Superior Court Case No. 3AN-81-5274 CI, dated May 21, 2001, ending active judicial supervision and removing class counsel |
|-----------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Exhibit B | Motion for summary judgment in *Helveston v. Brooks*, District of Alaska Case No. 3:17-cv-00154RRB, dated February 5, 2019 |
| Exhibit C | Motion to dismiss in *Hopkins v. Dept. of Corr.*, District of Alaska Case No. 3:14-cv-00172-RRB, dated March 5, 2015 |
| Exhibit D | Motion to dismiss in *Bell v. Coward*, District of Alaska Case No. 3:07-cv-00034-RRB, dated February 1, 2008 but filed January 31, 2008 |
| Exhibit E | Order issued in the *Cleary* litigation, Alaska Superior Court Case No. 3AN-81-5274 CI, dated February 10, 2020, regarding motions for appointment of counsel and special master |
| Exhibit F | Settlement agreement from *Dowl v. Williams*, District of Alaska Case No. 3:18-cv-00119-HRH, dated September 3, 2019 and filed September 5, 2019 |

## INTRODUCTION

Ten Plaintiffs filed this putative class action on May 1, 2025, alleging that the Alaska Department of Corrections ("DOC") systemically fails to provide adequate medical, mental health, and dental care to people incarcerated in its prisons and jails in violation of the Eighth and Fourteenth Amendments of the United States Constitution. ECF 1. Specifically, Plaintiffs alleged that Defendants knowingly expose Plaintiffs and all people incarcerated in DOC carceral facilities to a substantial risk of serious harm by failing to provide adequate healthcare. *Id.* at 2.

Defendants do not challenge the substance of these allegations. Instead, Defendants ask this Court to dismiss Plaintiffs' Complaint because of a case filed in Alaska state court almost 45 years ago that challenged prison overcrowding and that has not been under active judicial supervision for nearly a quarter century. *See* ECF 46 at 2–3 (referencing *Smith v. Cleary*, 24 P.3d 1245 (Alaska 2001) (hereafter "*Cleary*")). Defendants boldly assert that *Cleary* forecloses any and all lawsuits about DOC healthcare in perpetuity. This contention is meritless. Defendants also ask this Court to abstain from hearing Plaintiffs' federal claims based on either *Younger* abstention or the *Colorado River* doctrine, and to dismiss the Governor from this action based on alleged Eleventh Amendment immunity.

Each argument fails. First, the decades-old *Cleary* litigation cannot and does not bar this action. Second, the narrow abstention doctrines do not apply to this case. Third, the Eleventh Amendment does not bar this suit against the Governor in his official capacity. For the reasons set forth below, the Court should deny Defendants' motion in its entirety and allow Plaintiffs to litigate the merits of the life-or-death matters they raise.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In 1981, a group of incarcerated people brought a class action in Alaska state court challenging DOC prison overcrowding and the attendant effects on 36 separate prison conditions, of which medical and dental and mental healthcare were one. *Cleary*, 24 P.3d at 1246; ECF 46-5 at 4–7. After trial in 1984, the state court issued an order in 1985 that included lengthy findings of fact and conclusions of law on a wide range of issues within DOC. ECF 46-8. Of relevance here, the 1985 order stated that DOC's healthcare met minimally adequate standards under the Alaska and United States constitutions at the time of writing—40 years ago. *Id*. at 40–42. After the mid-80s trial, the parties entered a court-approved "Final Settlement Agreement and Order" (the "FSA") in 1990. *Cleary*, 24 P.3d at 1246. The FSA governed many core aspects of DOC operations including, but not limited to, staffing, heat, lighting, ventilation, plumbing, law libraries, staff training, clothing, bedding, commissary, disciplinary procedures, and gate money provided to people upon their release from prison. ECF 46-1. The FSA contained limited provisions about medical care, and specified by its plain language that "***[t]his section does not limit an inmate's right of access to the courts regarding allegations of inadequate medical care***." ECF 46-1 at 24 (emphasis added). [1]

---

[1] The FSA required incarcerated people to receive medical, dental, and mental healthcare "comparable in quality to those available to the general public." ECF 46-1 at 21. It provided for an internal appeal procedure to review "all medical decisions made regarding health care to inmates…when an inmate requests review of the treatment" and a referral of the incarcerated person to the Division of Occupational Licensing once the internal grievance process was exhausted. *Id.* at 24. The same paragraph then states that access to the courts is not limited. *Id.*

2

The FSA was binding on DOC and "all inmates, with some exceptions, who are or will in the future be incarcerated in correctional facilities owned or operated by the state." ECF 46-1 at 7.[2] In 2001, the Alaska state court in *Cleary* terminated active judicial supervision of the FSA, ended court monitoring of DOC's compliance, and ordered that class counsel be withdrawn, such that there were no attorneys left to represent the plaintiffs in the case. The court retained jurisdiction primarily for the purpose of paragraph IX(B)(2) of the FSA, which provided that, following release of class counsel, any incarcerated person could bring a *pro se* action to enforce the FSA. Exhibit A at 2 (May 21, 2001 Order in *Cleary*);[3] ECF 46-3 at 13.

In July 2001, ruling on DOC's motion to terminate the consent decree, the state court held that the then-newly enacted Alaska Prison Litigation Reform Act (APLRA), Alaska Stat. Ann. § 09.19.200, left the FSA intact as a final judgment, but the court further narrowed enforceability of the FSA by limiting the permissible claims that could be brought in individual *pro se* motions, in accordance with the restrictions in the APLRA. *See* ECF 46-6, 46-7. Since the 2001 modification, Alaska courts have consistently held that the only permissible claims for enforcement of the FSA within *Cleary* are by *pro se* litigants who demonstrate that, in addition to violating the FSA, DOC is also independently violating a state or federal right. *See, e.g.*, *Hertz v. State, Dep't of Corr.*, 230 P.3d 663, 666 (Alaska

---

[2] Among those expressly excluded from the FSA were "individuals charged only with a federal offense or federal offenses, individuals awaiting extradition with no pending charges other than a federal offense or offenses, individuals temporarily incarcerated because of involuntary mental commitment proceedings, and individuals taken into protective custody pursuant to AS 47.37.170 because of their intoxication." *Id.* at 7 n.1.

[3] All exhibits to this brief are attached to the Declaration of John A. Freedman, filed herewith.

3

2010); *Antenor v. Dep't of Corr.*, 462 P.3d 1, 11 (Alaska 2020). To date, the *Cleary* docket reveals that no *pro se* litigant has been able to succeed on such a claim in almost a quarter century.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff need only state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "accept as true all of the factual allegations contained in the complaint" and construe the complaint in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (internal citations omitted). To dismiss a claim under this rule, "the court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of undisputed matters of public record that are outside the pleadings." *Snead v. Wright*, 427 F. Supp. 3d 1133, 1136 (D. Alaska 2019). "A dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (quotation omitted).

## ARGUMENT

I.   ***Cleary* does not prevent incarcerated people from suing in federal court to protect their federal constitutional right to adequate medical care.**

No provision of the *Cleary* FSA forbids incarcerated people, or attorneys acting on their behalf, from filing a complaint in state or federal court to enforce their state or federal constitutional rights. Indeed, the FSA specifically provides it "does not limit an inmate's

right of access to the courts regarding allegations of inadequate medical care." ECF 46-1 at 24.[4]

Defendants nonetheless assert that "[t]he Cleary FSA directs that any redress must be sought in state court," citing the Alaska Supreme Court's holding in *Hertz*. ECF 46 at 21–22 (citing *Hertz v. State, Dept. of Corr.*, 869 P.2d 154, 155 (Alaska 1994)). Not so. *Hertz* is about actions for non-compliance *with the FSA*, not the Constitution. *Hertz*, 869 P.2d at 154–55.

Prisoner litigation since 2001 confirms that the FSA does not bar constitutional claims. Numerous people incarcerated in Alaska prisons have sued DOC in federal court for providing constitutionally inadequate medical care; yet these cases were not dismissed because of *Cleary,* nor did DOC raise *Cleary* as a basis for dismissal. *See, e.g.*, Exhibit B (February 5, 2019 Motion for Summary Judgment in *Helveston v. Brooks*, 3:17-cv-00154RRB); Exhibit C (March 5, 2015 Motion to Dismiss in *Hopkins v. Dept. of Corr.*, 3:14-cv-00172-RRB); Exhibit D (January 21, 2008 Motion to Dismiss in *Bell v. Coward*, 3:07-cv-00034-RRB). In 2020, the *Cleary* court recognized the continued availability of

---

[4] Defendants do not assert that the APLRA bars this litigation, yet they inexplicably devote a portion of their brief to the statute. ECF 46 at 10–13. It is black-letter law that a state statute cannot restrict the availability of relief under federal law in federal court, as is sought in this case. Indeed, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." *Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496, 503 (1982) (cleaned up); *see also Perez v. Campbell*, 402 U.S. 637, 652 (1971) (citing "the controlling principle that state legislation that frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause"); *Felder v. Casey*, 487 U.S. 131, 138 (1988) (state law notice of claim requirement in § 1983 actions is invalid, even as to actions brought in state court); *Patsy*, 457 U.S. at 516 (exhaustion of state administrative remedies not required as a prerequisite to § 1983 suit). The Alaska PLRA thus does not bar any of Plaintiffs' claims.

judicial remedies apart from *Cleary* when it pointed out that "the parties have ways to enforce their Constitutional rights unrelated to the CFSA." Exhibit E at 6 (February 10, 2020 Order in *Cleary*). In another recent federal case, DOC entered into a federal court-approved consent decree requiring DOC to provide sufficient food to prisoners observing Ramadan, *see* Exhibit F (September 3, 2019 Settlement Agreement in *Dowl v. Williams*, 3:18-cv-00119-HRH), even though the FSA has provisions addressing both religious observance and food. ECF 46-2 at 9–10; ECF 46-1 at 20–21.

As detailed below, Defendants' contention that this entire litigation, filed in federal court, raising federal constitutional claims, is barred by a zombie state court settlement agreement from 35 years ago, is meritless.

### A. This case is not barred by claim preclusion or issue preclusion.

Defendants fail to show that *Cleary* precludes this litigation. Defendants' argument that the *Cleary* FSA permanently forecloses any future litigation about healthcare in DOC facilities is inconsistent with class action law, the status of *Cleary,* and the FSA's language. Their argument also contravenes the right of access to the courts, common sense, and sound public policy.

Consistent with these points, both the Ninth Circuit and the Alaska Supreme Court squarely rejected DOC's efforts in the 1990s to say that *Cleary* bars further lawsuits challenging conditions at DOC facilities. *See, e.g.*, *Hiser v. Franklin*, 94 F.3d 1287, 1294 (9th Cir. 1996); *Ferguson v. State, Dept. of Corr.*, 816 P.2d 134 (Alaska 1991) ("[T]here must have been a full and fair opportunity to litigate the issue before res judicata can be applied."). Both *Ferguson* and *Hiser* were decided in the 1990s, while the court was still

actively monitoring *Cleary* and class counsel was still representing the *Cleary* plaintiffs in active class-wide litigation. Now *Cleary* has been unavailable for class-wide relief since 2001, and the same result should follow—*Cleary* does not bar Plaintiffs' claims.

### 1. Plaintiffs' claims are not barred by claim preclusion.

Under claim preclusion, "a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action." *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997) (citing *Blake v. Gilbert*, 702 P.2d 631, 634–35 (Alaska 1985), overruled on other grounds by *Palmer v. State*, 770 P.2d 296 (Alaska 1989)).[5] The party moving for claim preclusion bears the burden of establishing all elements. *Bullock v. Wells Fargo Bank, N.A.*, No. 4:23-cv-00017-SLG-KFR, 2024 WL 2138384, at *3 (D. Alaska Apr. 18, 2024) (citing *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)). Defendants fail to meet this burden. Defendants' claim preclusion argument fails on the third element for two reasons—the cases do not involve the same causes of action or the same parties.

---

[5] Although a federal court sitting in federal question jurisdiction typically applies federal law, in deciding whether to give a judgment preclusive effect, "[i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Ross v. Alaska*, 189 F.3d 1107, 1110 (9th Cir. 1999) (quoting *Hiser*, 94 F.3d at 1290). Therefore, to determine the preclusive effect of *Cleary*, Alaska's res judicata law applies. *See Hiser*, 94 F.3d at 1290. Under Alaska law, res judicata includes both claim preclusion and issue preclusion. *See Dixon v. Pouncy,* 979 P.2d 520, 523 (Alaska 1999); *Hiser*, 94 F.3d at 1290. Here, there is no material difference between Alaska and federal law.

7

### a.     Plaintiffs' claims are not the same as those raised in *Cleary*.

When determining whether two cases involve the same cause of action, Alaska courts conduct a transactional analysis. *McElroy v. Kennedy*, 74 P.3d 903, 907 (Alaska 2003). "Alaska res judicata law generally bars relevant claims that could have been brought in the earlier litigation." *Hiser*, 94 F.3d at 1292. Later litigation will only be barred by "the earlier litigation if it is part of the same "transaction, or series of connected transactions, out of which the action arose." *Id.* (internal quotations omitted); *see also McElroy,* 74 P.3d at 908 ("What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation."). Here, Defendants' claim preclusion argument fails because Plaintiffs' claims were not (and could not be) part of the same transaction as the claims brought in *Cleary*.

"Res judicata does not act as a bar when the conduct giving rise to the later suit post-dates the conclusion of the first suit." *Jackinsky v. Jackinsky*, 894 P.2d 650, 656 (Alaska 1995). The conduct from which this case arises significantly post-dates the 2001 effective conclusion of *Cleary*. And the current state of the DOC healthcare system has little to no relationship to the system at the time the *Cleary* plaintiffs filed their complaint—nearly 45 years ago.[6]

---

[6] For example, all but one health-related DOC policies and procedures were either developed or substantially revised since the *Cleary* FSA and all were either developed or updated since 1981. *See* Alaska DOC Policies and Procedures 807.01–24, available at https://public.powerdms.com/AKDOC/tree.

8

Further, since the settlement of *Cleary*, the medical, dental, and mental healthcare at DOC has deteriorated. The state court wrote in 2001 that the plaintiffs alleged no ongoing class-wide violations. ECF 46-6 at 5–8. By contrast, a 2010 report—prepared by DOC officials and the ACLU of Alaska—"concluded that DOC had serious deficiencies in medical care, including inadequate staffing, lack of prompt or adequate treatment, suicide prevention protocols at odds with national standards, and under-treatment of mental illness." ECF 1 ¶ 4(g). More recently, reports from the Alaska State Ombudsman in 2021 and 2024 concluded that DOC has failed to provide adequate dental care. ECF 1 ¶ 4(f).

And the facts behind Plaintiffs' claims here are so far removed from the facts in *Cleary* that they are not part of the same transaction. *Jackinsky*, 894 P.2d at 656. As Defendants concede (ECF 46 at 26), claim preclusion did not bar the individual or class claims in *Hiser*. There, the court rejected a claim preclusion argument because while the "photocopying challenge implicates the same right of 'access to the courts,'" it arose under "a different set of operative facts." 94 F.3d at 1292; *see also Ferguson*, 816 P.2d at 138 n.7 (acknowledging that if res judicata applied to Ferguson under the State's assertion, then the doctrine would apply forever, "regardless of the advancements in technology").[7]

---

[7] *See also Hiser*, 94 F.3d at 1292 n.4 ("That carbon paper and typewriters were addressed in the consent decree should not mean that the State's photocopying policy and practices may never be challenged."); *id.* at 1293 ("Arguably, everything related to prison life could conceivably be deemed part of 'a series of transactions' when a broad-based class action is brought, but if this is how claim preclusion is defined in the class action context, it would essentially make class actions obsolete.").

**b.** *Cleary* **did not involve the same parties as in this case.**

"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. at 884 (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)); *see also Jackinsky*, 894 P.2d at 656–57 (holding that res judicata "does not apply where a party did not have a fair opportunity to litigate the matter at issue in the earlier suit"). "[T]he requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979) (quotation omitted). In a class action, a "person not named as a party may be bound by a judgment on the merits of the action," only "*if she was adequately represented by a party who actively participated in the litigation.*" *Taylor*, 553 U.S. at 884 (citing *Hansberry*, 311 U.S. at 41) (emphasis added).

Here, there is no dispute that none of the named Plaintiffs were named parties in the *Cleary* class action. None of the Plaintiffs were incarcerated at the time the *Cleary* lawsuit was initiated in 1981 or when the FSA was entered in 1990, and the same is true for all but a few members of the putative class. Seven named plaintiffs—Plaintiffs Vail, Christiansen, Nickalaskey, Shirley, Olrun, Holt, and Whitlow—were not even born at the time *Cleary* was filed, let alone afforded the opportunity to be heard.

Further, the putative class in this case includes categories of people who were never part of *Cleary*'s certified class at all. The FSA expressly excluded "individuals charged only with a federal offense or offenses, individuals awaiting extradition with no pending

10

charges other than a federal offense or offenses, individuals temporarily incarcerated because of involuntary commitment proceedings, and individuals taken into protective custody pursuant to AS 47.37.170 because of their intoxication." ECF 46-1 at 7 n.1. The proposed class in this case includes "all prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the Alaska DOC." ECF 1 ¶ 81. Thus, it expressly includes people who were excluded from the FSA. For example, Christopher Nickalaskey, a named Plaintiff held in DOC custody on only federal charges, would be barred from obtaining relief under the FSA. Defendants offer no argument for how the FSA can bind people who were specifically excluded from the FSA.

### c. **Plaintiffs were not adequately represented by *Cleary* class counsel.**

Because of the breadth of the *Cleary* class definition, which extended to "future" incarcerated persons held pretrial or sentenced on state charges, Defendants imply that Plaintiffs and members of the putative class might be considered "absent" members of the *Cleary* class. ECF 46 at 20. Even if Plaintiffs are considered absent class members, *cf. Hiser*, 94 F.3d at 1293 (noting that plaintiff Hiser was "an unnamed, absent class member" of the *Cleary* class because *Cleary* purported to be brought on behalf of "all future Alaska inmates"), the "Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see Ferguson*, 816 P.2d at 138 (to safeguard "the constitutional requirements of due process and full faith and credit[,] . . . absent class members are not bound by a judgment in a class action unless the class representative

11

provided adequate and fair representation"); *see also Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005) (cautioning that "absent class members' rights must be scrupulously observed"), *amended*, No. 03-17095, 2005 WL 1154321 (9th Cir. May 17, 2005). "The question of adequate representation can best be resolved by determining whether the interests of those who would attack the judgment were *vigorously pursued and protected* in the class action by qualified counsel." *Ferguson*, 816 P.2d at 138 (citations omitted) (emphasis added).

The law of adequacy forecloses preclusion here. As both the Ninth Circuit and the Alaska courts have found, the *Cleary* class did not (and could not) vigorously pursue and protect the interests of future incarcerated persons (including the named Plaintiffs or putative class) because (1) as a result of the Alaska state court's 2001 order dismissing class counsel, no counsel has represented the *Cleary* class for 24 years; (2) the *Cleary* litigation focused on prison overcrowding and its impact on many prison conditions, only one of which was healthcare; and (3) the *Cleary* class representatives and counsel had no incentive to vigorously protect the interests of plaintiffs who would not enter DOC custody for nearly 40 years. *See Ferguson*, 816 P.2d at 138 (finding no binding effect where the court "[could not] conclude that [plaintiff] ha[d] been fully heard"); *Hiser*, 94 F.3d at 1294 (finding no adequate representation because policy at issue "was given no consideration in the *Cleary* litigation, much less 'careful consideration'").

Without legal representation in *Cleary*, the only avenue that remains for people incarcerated in Alaska to enforce the FSA is *pro se* motions. This is not adequate representation. Once the court withdrew class counsel in 2001, the *Cleary* class effectively

ceased to exist as a legal entity, as it had no ability to advocate for the interests of future absent class members. With no class counsel, by definition the interests of future class members could not be adequately protected by the *Cleary* class. *See Ferguson*, 816 P.2d at 138.

The *Cleary* class did not vigorously protect Plaintiffs' interests because, unlike the claims in *Cleary*, Plaintiffs' allegations here focus exclusively on the harm they suffer and are at risk of suffering as a result of DOC's constitutionally inadequate healthcare. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 588–89 (9th Cir. 2010) (holding that "the *Benney* Class Plaintiff did not vigorously prosecute the claims relevant to this case" because "the *Benney* class action was brought to remedy a different set of injuries"). Here, Plaintiffs allege that systemic inadequacies at every stage of the healthcare process, such as screening of serious health conditions, access to clinicians, medications, medical devices, and medical supplies, access to specialty care, access to emergency care, and the medical records system. ECF 1 ¶ 2. By contrast, the medical, dental, and mental healthcare claims in *Cleary* were one relatively minor aspect of the sweeping litigation and negotiations that resulted in an FSA with 50 discrete subsections, the vast majority of which are not about healthcare. ECF 46-1 at 3–4.

In the Fourth Amended Complaint, the *Cleary* plaintiffs raised 36 claims alleging "unlawful conditions or treatment," including overcrowding, inadequate running hot and cold water, unsanitary conditions, inadequate access to counsel, inadequate staffing, discriminatory treatment, and others. ECF 46-5 at 4–7. Of those 36 claims, only one addressed healthcare, and did so at a high and generic level. ECF 46-5 at 5 (plaintiffs "are

subjected to unreasonable risks of harm as a result of lack of adequate mental and physical health care"). And the *Cleary* court made clear that it "expresses no view on the merits of any individual prisoner's particular claim regarding medical, psychiatric or drug/alcohol rehabilitation needs." ECF 46-8 at 49 n.1. The *Cleary* class broadly addressed prison conditions in the FSA; it did not vigorously protect the current Plaintiffs' healthcare interests. Nor could it—the class and its counsel at the time could not anticipate what healthcare issues would arise 40 years later and the level of care DOC would or would not provide.

The Alaska Supreme Court in *Ferguson* and the Ninth Circuit in *Hiser* both rejected claim preclusion arguments based on *Cleary* expressly because the *Cleary* class did not vigorously protect the interests of the later plaintiffs. In *Ferguson*, the court held that "the *Cleary* plaintiffs did not adequately represent Ferguson's interests" because the challenged EMIT test "constituted a relatively insignificant aspect of the litigation and negotiations" in *Cleary*. 816 P.2d at 135, 138–39. Even after considering drug testing generally on summary judgment, the court "[could not] conclude that Ferguson ha[d] been fully heard on the issue of the prison's drug testing policies" because the *Cleary* plaintiffs did not present any evidence regarding the EMIT test. *See id*. at 138. Likewise, in *Hiser*, the plaintiff challenged DOC's refusal to photocopy legal documents. 94 F.3d at 1292–93. Because the policy was "not adjudicated in the *Cleary* litigation," the court concluded that "Hiser's interests in challenging the photocopying policy were not adequately represented." *Id*. at 1293 (quotation omitted).

14

Defendants' attempts to distinguish these cases fall flat. They refer to "the superior court's findings after the 1984 trial," ECF 46 at 24, but, as discussed above, those do not show that *Cleary* counsel vigorously pursued and protected the specific healthcare claims Plaintiffs bring today. That non-class-representative "[c]lass members had [the] opportunity to provide comments on the FSA," ECF 46 at 24, cannot salvage Defendants' argument, because people incarcerated subsequently have no such opportunity.

The *Cleary* class had no incentive to vigorously protect the interests of the plaintiffs in this matter. Prior to negotiating the final terms of the FSA, the *Cleary* court determined that DOC had provided constitutionally adequate healthcare at the time. ECF 46-8 at 49. With no existing healthcare interests to assert following the order, the *Cleary* class could not have vigorously pursued any pending healthcare interests when negotiating the FSA, let alone those of absent class members from decades in the future. *See Gonzales v. Cassidy*, 474 F.2d 67, 75–76 (5th Cir. 1973) (class representative failed to adequately represent absent class members by not appealing an order that denied retroactive relief to all class members except the representative).

As warned in *Ferguson*, if claim preclusion applies to Plaintiffs, "who w[ere] not incarcerated when th[ese] issue[s] w[ere] decided in *Cleary*, then under [Defendants'] assertions this doctrine will apply forever between [it] and all persons who are incarcerated in the future, regardless of the advancements in technology"—which would be fundamentally unfair and a clear due process violation. *Ferguson*, 816 P.2d at 138 n.7. Accordingly, under the greater scrutiny afforded to class actions in determining adequate

representation, claim preclusion does not bar Plaintiffs' claims. *See Cummings*, 402 F.3d at 944.

### 2. Issue preclusion does not bar the issues raised in the Complaint.

Under issue preclusion, or collateral estoppel, a prior action may prohibit relitigating issues in a subsequent action if those issues were actually determined in the first case. *Blake J. v. State*, 554 P.3d 430, 437 (Alaska 2024).[8] To succeed on issue preclusion, the party arguing must show that:

> (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.

*State, Dep't of Revenue v. BP Pipelines (Alaska) Inc.*, 354 P.3d 1053, 1068 (Alaska 2015); *see Smith v. Stafford*, 189 P.3d 1065, 1075 (Alaska 2008) (holding that the party asserting estoppel has the burden of proof and persuasion) (citing *Hernandez v. City of Los Angeles,* 624 F.2d 935, 937 (9th Cir.1980)). "To sustain this burden a party must introduce a record sufficient to reveal the controlling facts and *pinpoint the exact issues* litigated in the prior action." *Smith v. Stafford*, 189 P.3d at 1075 (emphasis added). Moreover, "[c]ollateral estoppel is not to be applied mechanically." *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 809 (9th Cir. 1980). The principle "is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become

---

[8] As discussed *supra* note 5, to determine the preclusive effect of *Cleary*, Alaska law applies.

16

obsolete or erroneous with time." *Comm'r v. Sunnen*, 333 U.S. 591, 599 (1948). Issue preclusion does not apply where "controlling facts or legal principles have changed significantly since the state-court judgment." *Montana v. United States*, 440 U.S. 147, 155 (1979). Here, Defendants' vague handwaving at *Cleary* and the FSA does not come close to meeting their burden—the findings of fact issued after the 1984 trial were specific to DOC conditions at that time and are not applicable to a lawsuit brought decades later. Defendants' argument fails on each of the four elements.

Defendants cannot establish the first element, the "same parties," because, as explained *supra*, the proposed class in this case is different from the class covered by the FSA, and the Plaintiffs and the putative class members did not participate in *Cleary* and were not adequately represented by the *Cleary* class. Also as noted above, one of the Plaintiffs, Nickalaskey, is categorically excluded from the *Cleary* class. Issue preclusion is "not applicable to a party who has not had the opportunity to litigate a matter." *See Austin v. Fulton Ins. Co.*, 498 P.2d 702, 704 n.7 (Alaska 1972).

On the second element, Defendants argue that *Cleary* bars Plaintiffs' claims because "[t]he issues raised in this litigation are identical to those in *Cleary*." ECF 46 at 24. Not so. As discussed *supra*, the healthcare issues litigated in *Cleary* bear little resemblance to the issues Plaintiffs litigate now. And "[i]ssue preclusion only bars the relitigation of issues *explicitly* litigated and necessary to the judgment." *Hiser*, 94 F.3d at 1290 (emphasis added).

Defendants fare no better on the third and fourth elements: Defendants argue the FSA itself is the determination of litigated issues. Plaintiffs' issues were neither resolved

in *Cleary*, nor essential to the final judgment. As articulated by the Alaska Supreme Court, "an issue is actually litigated when it is raised and submitted for determination." *Jackinsky*, 894 P.2d at 655; *see also Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th Cir. 2019) (same). "[C]ases which are resolved by settlement or consent or confession of judgment do not involve actual litigation of an issue of fact or law." *Id.* Because the parties intended the FSA to be nothing more than "a full and final disposition of the pending claims in this case," ECF 46-1 at 6, the FSA (a consent decree) cannot represent the actual litigation or determination of every issue raised at trial. *See Strong v. Williams*, 435 P.3d 872, 876 (Alaska 2018) ("This language demonstrates that the parties intended to settle the claims … not to finally determine the factual or legal issues in the lawsuit."); *Jackinsky*, 894 P.2d at 655 ("The settlement prevented any issues from actually being litigated or determined.").[9]

Again, as detailed above, the few provisions in the FSA addressing healthcare were necessarily not essential to the final judgment because the *Cleary* court had concluded that the healthcare provided to incarcerated people at that time was sufficient, such that it was not even an issue to be resolved at the time of settlement. *See, e.g.*, ECF 46-8 at 37. Because the constitutionality of healthcare was not among "those matters in issue or points controverted," in the FSA, the FSA has no preclusive effect on this case. *Sunnen*, 333 U.S.

---

[9] Defendants do not contend that the *Cleary* court's order following trial, which was on appeal when the court approved the FSA, is the preclusive determination of litigated issues. For the sake of clarity, it is not. The order not only found that medical care as of 1985 was not unconstitutional, but it was not the determination that resolved the case, and was therefore not "essential to the final judgment." *BP Pipelines*, 354 P.3d at 1068.

18

at 597–98 (quotation omitted). The relevant issues in this case—Plaintiffs' current challenges to the DOC healthcare system—were not and could not have been decided in *Cleary* or resolved in the FSA. *See Sykes v. Lawless*, 474 P.3d 636, 643 (Alaska 2020) (finding no preclusive effect because "the relevant issues in th[at] case … were not resolved in the [previous] litigation").

In sum, Defendants fail to meet their burden to show that any substantive healthcare issues—let alone current issues—were actually or necessarily litigated in *Cleary*; thus, the element of identical issues is not met, and issue preclusion poses no bar. *See Strong v. Williams*, 435 P.3d at 876 ("Without a determination of factual or legal issues in that action, there is no determination of those issues that can have a preclusive effect in this one."); *see also Hiser*, 94 F.3d at 1290.

### 3. Applying claim or issue preclusion would violate jurisprudential norms, fairness, and logic.

When the *Cleary* FSA was approved by the state court in 1990, it protected incarcerated people by requiring DOC to maintain adequate conditions of confinement. Now, 35 years later and a quarter century after the state court ended active supervision, Defendants ask this Court to resuscitate the FSA as a perpetual shield protecting the Department from federal court litigation about any of the covered provisions. This would convert an abandoned decades-old court-ordered settlement once intended to improve Alaska's prison conditions into a perpetual bar on any future challenges to DOC's current conditions. This perverse result cannot be.

19

Defendants' argument ignores the practical reality that the 35-year-old FSA is functionally dead and provides no viable pathway for those incarcerated today to seek class-wide relief for unconstitutional medical care. The state court's 2001 order directs that the only action ever available under *Cleary* would be a *pro se* enforcement claim that establishes both an FSA violation and a state or federal law violation that the *pro se* litigants also must prove affects the entire class of *Cleary* plaintiffs. *See Barber v. State, Dep't of Corr.,* 393 P.3d 412, 421 (Alaska 2017). But akin to federal court, Alaska law categorically bars *pro se* litigants from serving as class representatives, and there has long been no class counsel in *Cleary*. Thus, a *pro se* litigant could not assert class-wide claims nor obtain discovery that would evidence a class-wide constitutional violation, making this supposed state court avenue a dead end.

Because *Cleary* is no longer a viable avenue for redress of class-wide unconstitutional conditions, Defendants' argument that *Cleary* is the only avenue would also deny Plaintiffs and the putative class access to the courts. This would be unconstitutional. "It is well established that inmates have a constitutional right of access to the court. That right is premised on the Due Process Clause and assures inmates of the opportunity to challenge violations of their constitutional rights, and unlawful convictions." *Storseth v. Spellman,* 654 F.2d 1349, 1352 (9th Cir. 1981) (citing *Bounds v. Smith,* 430 U.S. 817, 821 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974); and *Procunier v. Martinez,* 416 U.S. 396, 419 (1974)). Access to the courts includes civil rights actions, *Storseth,* 654 F.2d at 1352, and must be "adequate, effective, and meaningful." *Taylor v. Delatoore*, 281 F.3d 844, 848 (9th Cir. 2002). The Court should reject Defendants'

baseless theory that the *Cleary* FSA is preclusive because it would deny the class adequate, effective, and meaningful access to the courts.

Reading the FSA to bar all future class-wide prison conditions litigation would also distort the FSA into an agreement that harms incarcerated people in Alaska rather than providing protection. It would be fundamentally wrong and frustrate both the language and the purpose of the FSA itself to allow Defendants to turn a court-ordered consent decree intended to protect incarcerated people into something that categorically blocks further judicial inquiry into prison conditions and any attempts to improve them.

### B.     Neither *Rooker-Feldman* nor 28 U.S.C. § 1738 bars Plaintiffs' claims.

Defendants next argue that Plaintiffs' claims are barred under the *Rooker-Feldman* doctrine or 28 U.S.C. § 1738. ECF 46 at 28. Their inchoate argument fails.[10]

*Rooker–Feldman* is a narrow doctrine "confined to . . . cases brought by *state-court losers* complaining of injuries *caused by state-court judgments* . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added); *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) (emphasizing the narrowness of *Rooker–Feldman*). It applies "only to suits alleging errors by the state courts in rendering judgment." *Cogan v. Trabucco*, 114 F.4th 1054, 1064 (9th Cir. 2024).

---

[10] Defendants fail to clarify which doctrine they invoke. They alternate "depending on plaintiffs' arguments in opposition." ECF 46 at 28. Defendants' failure to specify their argument in their opening brief forecloses and waives any such argument in their reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

*First*, Plaintiffs are not "state-court losers." A settlement is not a state court loss and the Plaintiffs here did not participate in *Cleary*. Nor can Defendants have it both ways. They cannot claim that Plaintiffs are "state court losers" in *Cleary* while asserting that the same settlement adequately represented Plaintiffs' interests. *See White v. Symetra Assigned Benefits Serv. Co.*, No. C20-1866 MJP, 2021 WL 3472408, at *3 (W.D. Wash. Aug. 5, 2021) ("It is somewhat awkward for Defendants to argue that Plaintiffs are "state-court losers" when they defend the very same proceedings for finding the transactions were fair and reasonable and in Plaintiffs' best interest."); *see also Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994) (holding *Rooker-Feldman* inapplicable because "the United States was not a party in the state court. It was in no position to ask this Court to review the state court's judgment and has not directly attacked it in this proceeding").

*Second*, Plaintiffs do not allege injuries caused by the court's decision in *Cleary*— they seek relief from present-day, ongoing and pervasive Constitutional deficiencies in DOC-provided healthcare. ECF 1 ¶¶ 7–80. *See Jeremiah M. v. Crum*, 695 F. Supp. 3d 1060, 1083–84 (D. Alaska 2023) (holding that "[t]o determine whether an action functions as a de facto appeal, courts 'pay close attention to the relief sought by the federal-court plaintiff'" and finding that "*Rooker-Feldman* does not apply here because Plaintiffs do not assert legal error by a state court as their injury and do not ask this Court [to] set aside any of the state courts decisions"). Defendants concede as much: "plaintiffs' complaint alleges legal wrongs *committed by defendants* rather than the *Cleary* court." ECF 46 at 28 (emphasis added). Indeed, Plaintiffs do not refer to *Cleary* at all in their Complaint.

Defendants' argument under 28 U.S.C. § 1738 also is unavailing. This statute "requires that federal courts give the state-court judgment, and particularly the state court's resolution of the res judicata issue, the same preclusive effect it would have had in another court of the same State." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 525 (1986); *see also Noel v. Hall*, 341 F.3d 1148, 1159 (2003) (same). Here, as discussed above, the *Cleary* litigation has *no* preclusive effect under claim preclusion or issue preclusion and cannot bar Plaintiffs' claims. The Alaska Supreme Court has already held that *Cleary* does not preclude subsequent challenges in federal court. *See Ferguson*, 816 P.2d at 138.[11] Therefore, lacking any basis for preclusion, Plaintiffs' claims cannot be barred under 28 U.S.C. § 1738. *Parsons Steel, Inc.*, 474 U.S. at 526 (holding that if the state-court judgment has no preclusive effect, then the federal court may "decide the propriety of a federal-court injunction").

## II.     This court should not abstain from considering this case.

Defendants are incorrect that this Court must abstain from deciding the claims in this case. ECF 46 at 29.

It is an axiomatic principle that under Article III of the U.S. Constitution "federal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). "Federal courts, it was early and famously said, have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. Jurisdiction existing, … a federal court's obligation

---

[11] Again, the plain language of the *Cleary* FSA states that incarcerated people may file new cases in federal or state court. See ECF 46-1 at 24.

to hear and decide a case is virtually unflagging." *Id.* at 77 (cleaned up). While the Supreme Court has recognized caveats to that principle based on "comity," *Younger v. Harris*, 401 U.S. 37, 44 (1971), these abstention doctrines are the "exception, not the rule," *Sprint*, 571 U.S. at 82.

The Supreme Court has imposed tight limits on *Younger* abstention: a federal court will abstain *only* where the federal action would unduly interfere with (1) a criminal prosecution; (2) a quasi-criminal civil enforcement proceeding; or (3) a civil proceeding involving enforcement of an order that is central to the administration of the state judiciary. *Sprint*, 571 U.S. at 78. Further, even if a case falls into one of these categories, a federal court must also consider other factors, including whether the action interferes with the state court proceedings and whether the state court provides the plaintiff with an adequate forum to present the federal claims. The Supreme Court clarified confusion about the scope of *Younger* abstention in 1989, writing, "only *exceptional* circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*") (emphasis added). This holds true "even in the presence of parallel state proceedings." *Sprint*, 571 U.S. at 81–82; *see id.* at 77 ("Parallel state-court proceedings do not detract from [the] obligation" "to hear and decide a case.").

The applicability of the *Younger* exception "must stand or fall upon the answer to the question whether the [state] court action is the type of proceeding to which *Younger* applies," a category that includes only "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in

24

furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 367–68. As Justice Scalia emphasized, the Supreme Court "never … suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action," reasoning that "[s]uch a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Id.* at 368.

Nor is this case subject to *Colorado River* abstention. ECF 46 at 31, 33. Under *Colorado River* abstention, only "exceptional circumstances" justify declining jurisdiction where a concurrent state proceeding is underway. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). In *Sprint*, a unanimous Supreme Court explained that the three "exceptional circumstances" identified in *NOPSI* strictly "define *Younger*'s scope," and that if the exceptional circumstances are not present, "the general rule [stated in *Colorado River*] governs: '[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Id*. at 73 (quoting *Colorado River*, 424 U.S. at 817).

Here, this civil rights class action case does not concern any pending criminal prosecution, nor does it concern any pending civil enforcement proceeding, or any pending civil proceeding. Plaintiffs' claims are brought under the U.S. Constitution and not under state law, as the *Cleary* case was. *NOPSI*, 491 U.S. at 367–68. Nor would this case interfere with any pending case uniquely furthering the state court's judicial functions. Defendants cannot merely cite *Younger* or *Colorado River* and intone the principles of "wise judicial administration," ECF 46 at 31, and preclude all federal actions such as this one. Defendants

claim that this litigation would "interfere with" the 1990 state court judgment in *Cleary* and could "vitiate" it, but they do not specify in what ways that is so, nor how the FSA allows the *Vail* Plaintiffs to assert their class-wide claims concerning present constitutional violations of their rights to adequate healthcare (it does not). ECF 46 at 31–33. Defendants also have not shown that the current claims prevent the state court from exercising its limited judicial function in that case. And as detailed at length above, the state court does not provide Plaintiffs an adequate forum to present the federal claims presented here.

## III. Governor Dunleavy is an appropriate defendant to this suit under *Ex parte Young*, and the Eleventh Amendment is no bar to Plaintiffs' claims.

Governor Dunleavy is an appropriate defendant in this action under the *Ex parte Young* exception to Eleventh Amendment immunity because the Governor has a "fairly direct" connection to enforcing constitutional prison conditions within the Alaska Department of Corrections.

State immunity does not apply in lawsuits "for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law," so long as the state officer has "some connection with enforcement of the [challenged action]." *Coal. To Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). Though this connection "must be fairly direct [and] a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit," *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir.1992), "[t]he connection requirement is 'modest.'" *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana,*

26

*Kentucky v. Labrador*, 122 F.4th 825, 842 (9th Cir. 2024) (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 904 (9th Cir. 2022)).

In other words, a plaintiff is not required to allege a state officer's "personal involvement in the acts or omissions constituting the alleged constitutional violation" to meet *Ex parte Young*'s connection requirement. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). Rather, the connection requirement "demands merely that the implicated state official have a relevant role that goes beyond a generalized duty to enforce state laws or general supervisory power . . . ." *Planned Parenthood*, 122 F.4th at 842 (quotation omitted).[12]

State governors have an obvious connection to state correctional facilities, and the Supreme Court and the Ninth Circuit have consistently allowed state governors to proceed as proper defendants under *Ex parte Young* in prison conditions cases. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493 (2011); *Coleman v. Newsom*, 131 F.4th 948 (9th Cir. 2025); *Valdivia v. Schwarzenegger*, 599 F.3d 984 (9th Cir. 2010); *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001); *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993) (en banc); *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992); *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985).

Governor Dunleavy's connection to the present action far exceeds the "modest" connection required. *Planned Parenthood,* 122 F.4th at 842. First, the Alaska Department

_____

[12] Additionally, for a suit to proceed under *Ex parte Young*, "the plaintiff must allege—not prove— an ongoing violation of federal law for which she seeks prospective injunctive relief." *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1221 (9th Cir. 2023). Defendants do not dispute that Plaintiffs' action meets these requirements.

27

of Corrections is under the direct supervision of the Governor. Alaska Const. Art. III § 24 ("Each principal department shall be under the supervision of the governor."). Governor Dunleavy is not only generally "responsible for the faithful execution of the laws," but "[h]e may, by appropriate court action or proceeding brought in the name of the State, *enforce compliance with any constitutional or legislative mandate, or restrain violation of any constitutional or legislative power, duty, or right by any officer, department, or agency of the State* or any of its political subdivisions." *Id.* at § 16 (emphasis added). Further, "[t]he governor may make changes in the organization of the executive branch or in the assignment of functions among its units"—including the Department of Corrections—"which he considers necessary for efficient administration." *Id.* at § 23.

Moreover, "[a]s the chief executive officer of state government, the Governor must supervise each principal department and has the responsibility of changing the organization or reassigning functions for efficient administration of the executive branch."[13]

Indeed, a number of Governor Dunleavy's predecessors have ordered DOC to improve its operations, and specifically, to improve its medical care. For example, in 2017, then-Governor Bill Walker issued an administrative order requiring DOC to develop and provide medication-assisted treatment at release to incarcerated people with opioid use disorder.[14]

---

[13] Handbook on Alaska State Government at 10, available at https://akleg.gov/docs/pdf/handbook.pdf.

[14] Administrative Order No. 283 (February 16, 2017), available at https://gov.alaska.gov/admin-orders/administrative-order-no-283/.

28

Similar actions with regard to DOC operations were taken by then-Governor Bill Sheffield, who created a Deputy Commissioner of Adult Corrections and delegated correctional authority to that office,[15] and former Governor Walter Hickel, who established the Governor's Criminal Justice Working Group "to address the many practical problems that arise between agencies, to keep pace with changes in the budget and prison population, to continue data collection and evaluation, and to monitor and review the performance of alternative punishments and prison sentences."[16] In 2003, then-Governor Frank Murkowski issued an administrative order to improve the operation of Alaska's prisons, ordering substantive, administrative and supervisory changes.[17] Governor Murkowski explicitly addressed "the delivery of inmate health care" in this administrative order that directly changed various aspects of prison administration, for example, creating the role of an internal auditor to "provide the ability to measure efficiency in each of the department's programs and operations."

These prior actions by Alaska's Governors dispense with any argument that Governor Dunleavy does not possess "some connection with [the] enforcement of" conditions at Alaska's prisons or the medical care provided by DOC. *Coal. To Defend Affirmative Action*, 674 F.3d at 1134. Defendants' argument that Governor Dunleavy cannot use his power to regulate the Alaska Department of Corrections is incorrect. His

---

[15] Administrative Order No. 77 (July 12, 1983), available at https://gov.alaska.gov/admin-orders/administrative-order-no-77/.

[16] Administrative Order No. 138 (Sept. 1, 1993), available at https://gov.alaska.gov/admin-orders/administrative-order-no-138/.

[17] Administrative Order No. 207 (January 22, 2003), available at https://gov.alaska.gov/admin-orders/administrative-order-no-207/.

29

predecessors did so. He has the authority—indeed, the *legal responsibility*—to address the unconstitutional prison conditions of the state agency he directs. The buck stops with him.

The limited case law Defendants cite demonstrates the significance of the prior actions Alaska's Governors have taken with the prison system. The only case discussed by Defendants—*Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 714 F.2d 946 (9th Cir. 1983) (cited at ECF 46 at 35–36)—concerned a plaintiff naming the governor of California in a challenge to the actions of a single local school district, over which the governor had no direct control. *See id.* at 953. In dismissing the governor from the suit, the court reasoned that the governor "lack[ed] the power to" remedy the effects of the alleged unconstitutional violation. *Id.* Not so here. As the administrative actions discussed above demonstrate, Alaska's Governor has the power to remedy the effects of his corrections agency's unconstitutional failure to provide adequate healthcare; he merely has not done so. And, unlike the plaintiff in *Los Angeles Branch NAACP*, who challenged an independent *local* school district over which the California governor had no control, Plaintiffs here challenge the actions of a *state* agency that is indisputably under the direct supervision of the Governor.

In short, Plaintiffs' claims against Governor Dunleavy rely on more than amorphous allegations that he has a generalized duty to enforce state law. The connection between the Governor's powers and the ongoing constitutional violations within DOC is more than "fairly direct," and relief against the Governor would provide adequate redress. And, even if Governor Dunleavy cannot, on his own, cure *all* of the constitutional violations Plaintiffs allege, "[a state official] does not need to be [the] primary authority to enforce the

challenged law[,] . . . [n]or does the [state official] need to have the full power to redress a plaintiff's injury in order to have 'some connection' with the challenged law." *281 Care Comm. v. Arneson*, 638 F.3d 621, 632–33 (8th Cir. 2011) (citation omitted).

Governor Dunleavy has a direct connection to the implementation, administration, and enforcement of constitutional conditions in DOC, triggering the *Ex parte Young* exception to Eleventh Amendment immunity. The Court should find that Governor Dunleavy is a proper named Defendant in this case.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion to Dismiss.

31

Dated: August 29, 2025

Respectfully Submitted:

Nancy Rosenbloom, NY 2168425*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Tel. 202-393-4930
nrosenbloom@aclu.org

David C. Fathi, Wash. 24893**
Joseph Longley, D.C. 90031392*
Alyssa Gordon, Ga. 592415**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel. 202-393-4930
dfathi@aclu.org
jlongley1@aclu.org
akgordon@aclu.org

Corene T. Kendrick, Cal. 226642*
Marisol Dominguez-Ruiz, Cal. 345416*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel. 202-393-4930
ckendrick@aclu.org
mdominguez-ruiz@aclu.org

Jeffrey A. Miller*
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306
Tel. 650-319-4500
jeffrey.miller@arnoldporter.com

  /s/ *John Freedman*        .
John A. Freedman*
Jocelyn A. Wiesner****
Katherine E. Schlusser*
Alejandra C. Uria*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel. 202-942-5000
john.freedman@arnoldporter.com
jocelyn.wiesner@arnoldporter.com
katherine.schlusser@arnoldporter.com
alejandra.uria@arnoldporter.com

Ruth Botstein, Alaska Bar No. 9906016
Natalie Cauley, Alaska Bar No. 2405038
Doron Levine, Alaska Bar No.
2101002***
AMERICAN CIVIL LIBERTIES UNION OF
ALASKA FOUNDATION
1057 West Fireweed Lane, Suite 207
Anchorage, AK 99503
Tel. 907-263-2008
Fax. 907-263-2016
rbotstein@acluak.org
ncauley@acluak.org
dlevine@acluak.org
courtfilings@acluak.org

Robert W. Stout* (admitted only in D.C.)
Alexander J. Potcovaru****
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel. 212-836-8000
robert.stout@arnoldporter.com
alex.potcovaru@arnoldporter.com

32

Luke Westerman\*
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street
Suite 3100
Denver, CO 80202
Tel. 303-863-1000
luke.westerman@arnoldporter.com


*Counsel for Plaintiffs*

\**Pro hac vice*.
\*\**Pro hac vice*. Not admitted to DC; practice limited to federal courts.
\*\*\*District Court admission forthcoming.
\*\*\*\**Pro hac vice* application forthcoming.

# CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I, John A. Freedman, an attorney duly admitted to practice law in the District of Columbia, Massachusetts, and New York, hereby certify that Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss complies with the word count limit set forth in Local Civil Rules 7.4 and 7.5, in that this brief is under 35 pages and contains 8,004 words, exclusive of the caption, table of contents, table of authorities, table of exhibits, and signature block. In preparing this certification, I have relied on the word count of the word processing system used to prepare this affirmation.

Dated: August 29, 2025
       Washington, DC

                                /s/ *John Freedman* .
                                John A. Freedman
                                ARNOLD & PORTER KAYE SCHOLER LLP
                                601 Massachusetts Ave., NW
                                Washington, DC 20001
                                Tel. 202-942-5000
                                john.freedman@arnoldporter.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, a true and correct copy of Plaintiffs'

Memorandum of Law in Opposition to Defendants' Motion to Dismiss has been served to

all counsel of record via the Court's CM/ECF system.


Dated: August 29, 2025
        Washington, DC

/s/ *John Freedman*        .
John A. Freedman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel. 202-942-5000
john.freedman@arnoldporter.com

35